You've allocated, actually, two spaces for what is really one case with a little blip of a difference with the second one. So with the Court's indulgence, I think I can get rid of the blip pretty much in the course of the argument on the first case. If I do so, it will be one case in one time. But let me begin with Northeast Medical Services or NIMS. In NIMS, the focus of the case, the entire focus of the case is on what are now two payments covering or applicable to fiscal years 2006 and 2007. In the papers leading up to this case, 2008 is mentioned prominently as though it's one of those years. However, there was actually never a sufficient, sufficiently high enough level of determination by the State, excuse me, to trigger a payment or obligation or offset if you didn't want to pay. So 2008 is still an open matter for NIMS. They have made no payment, nor has there been a demand for payment. So there's really a situation there vis-à-vis the Eleventh Amendment jurisdiction, which is what the case is about, where the Eleventh Amendment clearly hasn't been triggered. Anyway, and again, the focus is on these two years, now two years of payments. The reason we didn't make a big deal out of 2008 was that it had been proceeding fairly apace, and we thought by the time, really by the time district court proceeding was over, 2008 would be in, but it just hasn't happened. Now, La Clinica has two other years that are in question in this case for, if you will, and I'm going to just use a term that is not here of art, but merely for convenience and clarification, and that is for the past amounts, La Clinica has two payments at issue. NIMS' two payments are worth approximately $9.2 million, and those are actual payments. And the reason we didn't make a big deal out of it is because La Clinica is a roughly a million. In La Clinica's case, there wasn't a payment. La Clinica had the money offset by the State. NIMS made the payment because there was going to be an offset anyway. Let me ask you a question and stop you just a minute. It's my understanding, and I call it NIMS. I don't know whether I can call it that or not. But we do. NIMS elected Option 1 at some time, correct? That's correct. Now, as I understand it, yes, it had an Option 2 and then it elected Option 1. Option 1 triggers for 2009. And La Clinica, did they ever elect Option 1? No, that's the entire distinction between the two cases. That's what I thought. So La Clinica is still within an option where every year the same procedure that we claim is unlawful will take place. So there are payments that they've made, and then there are payments, if the situation continues, that they're going to have to make. But they're still vulnerable. After 2008, NIMS is no longer vulnerable to the Option 2, and it's only ‑‑ and so it's cleared out of that option. And that was the option that was requiring the payments and or the taking that we say is at issue. So to be clear on NIMS' position now, NIMS is not seeking prospective relief. Seeking prospective relief in the classic sense, no, Your Honor, except that I think for 2008, inasmuch as it hasn't been paid, I think we are effectively seeking prospective relief because there's been no payment assessment. But because the papers focus so hard on the payments ‑‑ Well, let me ask you another question about that, because it seems to me if they don't seek any prospective relief, if I suggest that the Eleventh Amendment precludes us from giving them any payment, is the case over? If the case is not over for 2008, but it would be over for 2006 and so. So it's all about those damages, really? It's all about ‑‑ well, it's all about the payments or the payments under duress, yes, for NIMS. Now, when you talked about 2008, is that part of the record here or not? No, it's in the record. It's not argued. I got you. It's just it simply wasn't argued. We anticipated a different set of facts as the case progressed, and it just this different set of facts never materialized. So in effect, the fact that NIMS has no further financial burden, if the Eleventh Amendment applies, then the case is done. With the exception of 2008, Your Honor, yes. As to the payment in 2008. Or after, if as necessary and it's not treated in this case, NIMS takes some action to whether seeking money you haven't been paid yet is prospective or not. I guess that would be the issue on the 2008. That would be the case with 2008 to the extent the Court grabs it. Right. Although since we've styled this whole thing as a matter of an effective taking by the State, it isn't a taking yet. It's soon going to be because it's going to progress inevitably, as these cases will, because the State's position, legal position is clear. But it hasn't happened yet. Our whole case boils down to a simple proposition. We've made payments under coercion or duress. In one instance, that's one client, NIMS. La Clinica's had the money literally taken from it. In both instances, the money that was, however you view it, coercively paid or taken, came from a fund that each grantee maintained based on its requirements as a grantee under Section 330 of the Public Health Service Act. Under the requirements pursuant to that Act, all revenue that these centers, these health centers, and that's what they are, receive in addition to their 330 money is literally controlled by 330 law. And what 330 says in a nutshell is if it's revenue that you secured to aid and abet your center, your health center, which it is, you can use it a bit more flexibly than with straight grant money that you're drawing down annually, but still with limitations. And the limitations, generally speaking, are the expender can't be explicitly prohibited by 330, and it has to benefit the 330 project, meaning, of course, that it has to be within the overall context of the program. I don't think you could go out, for example, although in silly sessions some people have said, well, suppose we buy a McDonald's and use the revenue. But I think realistically what Congress was talking about was cutting short some regulatory schemes that might otherwise inhibit, say, putting a quick repair on a roof and that sort of thing, to help the program get going. Say it had a little more flexibility than with the, excuse me, with respect to generally applicable government regulations, which might get you into prior approvals and times and delays and that sort of thing. In any event, the problem here with our two parties, NEMS and La Clinica, is that under the terms of the grant, they can't spend this is Federal law now. They can't spend the money that the State has claimed. And the reason they can't spend it is because in spending it, they would effectively give the State a discount for the Medicaid program. They would wind up taking less money from the State than their costs of doing business. There's a law passed in 1989 making these centers Federally qualified health centers. And that law requires a State to pay. Initially it was actual, actual cost, 100 percent of actual reasonable costs. When I say actual, it was the cost that they had been incurring. Now that standard reasonable cost is reflected in a fixed payment per visit. It's a proxy for reasonable costs. And that was established based on actual costs in fiscal years 99 and 2000. So it's not the actual cost, but it's a proxy for them. In either event, if they don't collect that level, they're giving the State a discount. 330 explicitly bars the giving of a discount. So this money that they're holding is limited by their Federal grant. This money that they're holding also, this is now revenue that they've received from Part D, this money also has a reversionary interest in the Federal government. So that if, for example, MEMS went out of business tomorrow, that money had not had to pay the State, would have been the Federal government's. It's still the Federal government's. It's Federal money that the State has now obtained unlawfully. It is really Federal money that the State has obtained unlawfully. There's no way around it. It's unlawful under the grant to claim it. It's unlawful effectively for either MEMS or La Clinica to have paid it. It is Federal money that Congress went out of its way in 1989 to literally prevent the States from getting their hands on. What should we do, so far as you're concerned? So far as we're concerned, it's really quite simple. This is a fluky case because, as you know, it stems from the enactment of Medicare Part D and the taking of a service away from Medicaid and sticking it into Medicare. There's some amount of this fixed fee or per visit rate, as we say, which is the term of art, in our papers. There's some small amount of that fixed fee that is still paying, at least hypothetically paying, for dual eligible costs. And the dual eligible costs aren't supposed to be borne by Medicaid anymore. They're supposed to be borne by Medicare. So all we're saying is the Court should direct the defendants to calculate, in good faith, presumably with our involvement, the amount of that embedded rate, take it away, and then everything is, in effect, correct under the law. Should we do it or should we remand it? I think the Court would have the authority, obviously, to direct that it be done. But if there's a question of fact, the State, I don't believe, challenges the rudimentary facts here. But if it does, we're, of course, on a dismissal motion, and it's pleadings. So if the State were to contest a fact, I suppose it would have to go down to the district court. And obviously, the district court would have to preside over the calculation of this amount, much smaller amount than the State is taking, that's embedded in the rate that should have been and should now be eliminated. Scalia. I'm very happy that you went through this factual stuff, because it gives me some better understanding of what I'm dealing with. I read the briefs, but I'm very appreciative of that. I guess my worry is, how do I get to the fact that the Eleventh Amendment doesn't prohibit this case? I mean, if I look at it that you are somehow an agent of the Federal Government, I didn't find any argument about that to the district court. I looked at your complaint. I didn't see anything in there that you're an agent of the Federal Government. In fact, the complaint alleges you're seeking a determination of rights, not of your rights, not of the United States' rights. It alleges a monetary award exclusively on your client's behalf. So I'm having trouble with how you're going to be the agent of the Federal Government. Well, I think if the complaint has confused Your Honor, I apologize. But in the complaint, I think we did make clear that we were acting or purporting to act as some kind of agent or trustee for the government. We've tried not to name this, because as you can see from the cases we've cited, you've got Seventh Circuit cases, you've got D.C. Circuit cases, you've got Fifth Circuit cases. All of them dance around. Are you a trustee? Are you a trustee? You have a protected you have an obligation to protect the Federal funds. The obligation arises under your grant. If you're protecting the Federal funds, or in this instance collecting, and in the legislative history behind Section 330, Congress says collect, it's hard to imagine that a duty to take, excuse me, every reasonable step or make every reasonable effort to collect wouldn't include at the extremes litigation, which is what we're doing. Well, however, if I look at 28 U.S.C. 516, I'm having a tough time understanding that that, which is the statute allowing somebody to give you this right as a Federal agent, I'm having a tough time seeing how that statute really does it. The statute doesn't make any provision for the AG to participate in or control the litigation. That's just a minor part, but that's a – I mean, I'm just trying to find some statute by which I can come up with what you're suggesting. The way we look at it, Your Honor, is we're – of course, we're looking at all the case law where we're having other circuits, literally circuits, saying that we're either in a trustee position or we're in an agent-like position or at the very least it's Federal funds and we're the logical guys to go get it back, because if we don't go get it back, then the Federal Government – the Federal Government ultimately would have a remedy, but the remedy would be to collect the money back from the State. It couldn't give it back to the grant – effectively, there's no way to give it back to the grantee where it was supposed to originally reside and be spent by the grantee. So what I think we're trying to do, Your Honor, is rather than put a label, we're trying to say that whatever we are, we're distinct from that category of plaintiffs that the Eleventh Amendment was aimed at, that we have a duty to protect the Federal funds, we have a duty to collect. If you read the legislative history on the original enactment of Section 330, that duty is spelled out quite explicitly and emphatically. And every reason – make every reasonable effort to collect is pretty strong language. All the money does is go back into our coffers, into what the D.C. Circuit describes effectively as a branch of the United States Treasury. It goes back for expenditure. If on the instant we get it back, the Federal Government says enough of this grant, we don't want it anymore, and terminates us, the money is the United States Government's. If I turn and rather think about you as a Federal agent, I turn and say, is this for the return of improperly seized property? Because there are cases about that. Well, that's what we're saying. And Swaver and Taylor would control if it's really a return. But to me, this case is a little bit different than them. I mean, California didn't receive these disputed funds pursuant to a scheme or a statutory right. The funds aren't held in a custodial trust. They'll come right from the Treasury. So this seems a little bit more like Edelman to me, that you're suing for a monetary right for violation of the Federal law. I don't think so, Your Honor. And the reason I don't think so. Well, that's why I asked the question. Well, thank you. The reason you pronounce it Swaver. I said Swaver, but I'm from Idaho, so I don't know. We dance around this with the district court, and I was never quite sure I heard the correct pronunciation. So we keep trying. We'll say Swaver because I was good enough for us for today. We think these cases are really effectively the same, because to us, the Taylor v. Wesley case and the Swaver case wind up saying this. If a State can't, under the law that's applicable, and in those cases it was at least Swaver was the California's chief statute. But if under applicable law the State can't obtain good title, then the State, then it can't be in the State treasury. It is inherently of a custodial nature. And by the way, that is true with case after case after case on parties that hold Federal funds and have to pay it back, whether it's through bankruptcy law or otherwise. If they have Federal funds and they have it impermissibly, they have a duty to maintain it and a duty to pay it back. If the State, under law, can't actually give good title to this money, and it obviously can't, because the only way you get title to Federal money is if the U.S. Congress says so, and here the U.S. Congress has enacted a scheme to prevent what's happened from happening. Then that's what we're suing for, which is not State treasury money. When I read LaClanica's brief, the blue brief at page 21, it says, what brought about this lawsuit was California's interpretation and implementation of an amendment to the Medicare Act. Now, to me, that essentially says, and I'm quoting LaClanica now, but again, it just seems to me that this claim is a claim because California misinterprets law, they're taking money they ought not to take, and again, that leads me back to why isn't this an Edelman case. And the only answer I can give, Your Honor, that I think is true of the law and true to our papers is that we're dealing with a program that is unique in the Federal government. By virtue of Section 330, all the money these guys receive, one way or another, is honest-to-God Federal money. That's the distinction. So when you look at the fact they get Federal money, number one, and that's what they do, that's all they have to spend. When you look at the fact, number two, that they're custodians of this money and designated by Congress to safeguard and protect it, when you look at the overall statutory scheme, which is designed to give them a payment in a certain amount for Medicaid and, by the way, the United States government, which is being represented to the tune of 60 percent in this case. So there's another question about whether the United States government, who's the agent of the government here, because the State is effectively only a 40 percent participant in this transaction. When you look at all of that and you look at the laws that we've cited about Antideficiency Act and the like, of money moving from one appropriation to another, I think what you wind up with is a fluke situation where there's a new law that's being passed, as the LaClinica brief indicated. There's got to be some adjustment, and the adjustment being made is an adjustment which is taking Federal funds to which the State has no authority against an entity that has a duty to safeguard that money. And if the entity is repaid, the overcharge, if you will, everything nestles back comfortably into the statutory scheme. If the entity can't obtain the money, then you have a perpetual taking by the State of Federal funds. And even if the government later decides it wants to go after it, you never have an effective remedy, and you can never put this situation back intact the way Congress intended. I see my light's out. I know I've combined the two cases, but unless the Court needs me, I'd like to have a chance at rebuttal. Kennedy, that's one of the reasons I questioned you more, because I knew you had two cases and we'll be done in one time. Thank you. No, I appreciate the fact that we're arguing two at once, so we'll give you some time for rebuttal. And, Allie, why don't you put 20 minutes on the clock for the government? Okay. We'll hear from the State. May it please the Court. Joshua Sondheimer for the State Defendants, the State of California, the Department of Health Care Services, and its director, Toby Douglas. Your Honor, NIEMS cannot pursue its claims in Federal court against these defendants. NIEMS can't. But where can they pursue the claims if you think they have? Let's assume for the sake of argument we have to that their claims are valid. What's the remedy? They have a remedy in before the AHC, there's an administrative appeals process that they were advised of in the final counting they received for their first year in question, and that's a mandatory remedy under State law. There's an appeal procedure to State court if they are dissatisfied with the decision at the AHC. But that's more or less an accounting remedy, isn't it, as opposed to a challenge to the whole scheme? Your Honor, I mean, where can they – you say they can't sue us in Federal court to challenge the entire scheme. Where can they sue you? Your Honor, I believe that their challenge is not specifically to the approach that the Department has taken. And let me explain. La Clinica bases its claim of illegality not on the approach itself taken by the State, but by the fact that as applied to La Clinica, it takes more than it believes or its costs to serve its Medicaid patients. So it actually is a fact-specific inquiry. Each center receives an individualized prospective payment system rate, and therefore, the application of the State's policy is different as to each health center. This is not a class action brought on behalf of Federal. No, I understand, but their claims are slightly different, it seems to me, and maybe you disagree. But they're saying, you forced us to take an illegal scheme, to participate in what they view as an illegal scheme. And I'm not sure how you can remedy that administratively when, as I understand the review that's taken by the agency, it's more or less, is the scheme administered properly? Am I missing something? Your Honor, I believe that the agency has the authority to say California is administering this program illegally, in violation of the Federal statute. I believe you're under that the agency can consider whether its approach is consistent with State law, with the State plan, and the requirements of the Medicaid statute. And even if it can't consider, even if the agency couldn't consider the claim that the Department's approach somehow violates Section 330 of the Public Health Service Act, which is not directly the case. Well, I know you disagree with that, but that's their claim. That's why I'm asking you. Yeah. Well, I think the Supreme Court has made clear that even where if an administrative agency can't consider a particular claim, if there's a mandatory administrative process that it must follow, that it needs to go through that process before it can raise its claim. All right. So it gets through the process. Then where's the remedy? I'm sorry, Your Honor? I mean, do you think there's a State remedy? I do believe there's a State remedy. I mean, beyond the administrative? Do you think it's a petition for review of the agency decision, reviewed for arbitrary and capricious by the California Court of Appeal or California Superior Court or California Supreme Court? Is that what you think? Yes, Your Honor. And that's provided for within the appeals, administrative appeals mechanism that's been set up by the State. Could the Federal Government sue you for this money? Well, I think if, in fact, these were Section 330 funds that the State had taken, I believe that the Fed would have sued me. Well, I mean, what you're really saying, and I think that's what my colleagues' question are, where do they present? Who's going to come after it? Who's going to remedy the problem? This is Federal money, as he suggests. Now, I'm not saying it is or it isn't. I'm just saying, does the Federal Government have the chance to do that itself? I think it could. I think the way it would most likely proceed is if CMS, which administers the Centers for Medicaid and Medicare Services, which administers the Medicaid program, believed that California was not in compliance with the State plan that it had approved here, that La Clinica can raise its objections with CMS, and CMS can take, review the State's approach and determine whether it was consistent with the State plan. There's certainly an administrative process established. I called over to find such a suit and couldn't find one. And that's why what he argues has some appeal to me. Well, I think that it's somewhat dependent on merits of the claim. I'm not going to get into the merits, because you think that, I mean, in terms of your argument. But we have to assume hypothetically that there's a violation of the Act. It's not consistent with the Act for purposes of making the Eleventh Amendment analysis today. I mean, I know you want to say, look, I have a whole bunch of other defenses and I want to sort it there. So where's the – I'm still struggling with the same fact. Do you think the Federal Government has a remedy in Federal court if it thinks California is not administering this properly, or not? I think that the remedy is pursuant to the Medicaid Act, Your Honor. If the Federal Government believes that the State is not acting consistently with the State plan or Federal law in any respect, CMS is the agency entrusted with authority to oversee the State's implementation of the Medicaid Act, and therefore can take appropriate action if it believes that the State is in violation of Federal law. Well, you haven't, I think, directly answered my question. Are you saying, as your – I guess I draw the inference that you're saying that there's a – that's a Federal administrative remedy and that it would not have the right to go into Federal court. Is that what you're saying? Well, Your Honor, I think that if the Federal Government believed that there had actually literally been a taking of Federal funds, that itself might be a different question. And I believe the Federal Government could in that instance step in and bring an action in Federal court against the State. So then the question is, are these parties appropriate agents of the Federal Government if there is such a Federal right? They certainly are not, Your Honor. No, but I mean, if they were, then you'd have to concede that the Eleventh Amendment would not bar their claims. I would concede that, Your Honor. But NEMS here, I've referred to it as NEMS as opposed to NEMS. Excuse me if there's any confusion. NEMS has not identified any statutory authority that gives it, first of all, the right to pursue litigation under Section 330. To begin with, Section 330 simply requires the Secretary to, in qualifying NEMS as a federally qualified health center, determine that it will take reasonable efforts to collect its costs. It's not an authorization of litigation to begin with. And second of all, to enable NEMS, a private party, to bring an action against the State itself, it would have to demonstrate that the statute was enacted to enforce rights under the Fourteenth Amendment and demonstrate that the statute shows clear congressional intent to abrogate State sovereign immunity. Section 330 does neither of those things. So there is no statutory authorization for NEMS to bring suit in Federal court against the State. For damages. Correct. For recovery of funds that it believes owed. Now, here, La Clinica, at least, is arguing prospective relief, and NEMS is arguing prospective relief vis-a-vis the 2,008 reimbursements. That's their claim, right? That's their claim, Your Honor. So why isn't that allowed under the Eleventh Amendment, in theory? If I may, first of all, as to NEMS, the fact that there is not yet a final accounting for the 2,008 year does not make their claim for damages, essentially, for that year, does not turn it into a prospective claim. I believe it's in the second independent living decision by this Court. Which was vacated, but nevertheless, on a different point, the Court made clear that in determining whether a claim is retroactive or prospective, one looks to the date services were provided. There's no question here. We're talking about services provided in the past. The fact that an accounting has not yet been made final for 2,008 merely demonstrates that the claim for that year is not yet right. They have the opportunity to present their challenges in an administrative proceeding at which time, whether or not, in fact, the department's approach takes too much money to leave them unable to cover their costs for Medicaid, that can be explored in that proceeding. And there may be no need for judicial review after that process has run its course. Excuse me. If it relates to La Clinica, they're still under option two, aren't they? So I guess I'm trying to figure out why it would be not the matter of injunctive relief when you're going to continue to proceed along this line to take funds in the wrong way, and why is that not something you could proceed on for prospective relief? Yes, Your Honor. I can understand Mims, your argument, based on what you just said, but why La Clinica? Yes, Your Honor. As to La Clinica, the first point is that they did not allege in their complaint any present or ongoing injury, did not allege that they continued to use the general reimbursement methodology. Well, they do, though. They do, though, don't they? They do allege that. Be that as it may, my understanding is, in fact, that they do continue to use that methodology. That does not require any different result here, Your Honor, because La Clinica failed to exhaust the available administrative remedies that it has under State law. And I would mention as well in that case that the State court decision, I'm sorry, the Federal court decision. That's correct, Your Honor. So why should we take up that affirmative defense here? Here. A couple of reasons, Your Honor. We argued exhaustion, the failure to exhaust below. We've argued it here. Right. NEMS and, excuse me, La Clinica has had opportunity to raise its objections to our argument regarding failure to exhaust and has not alleged that those remedies are not applicable, are inadequate in any way. They've alleged futility. We've identified in our papers why they cannot satisfy the futility standard. Well, it doesn't seem to me, really, if you read the district court's decision, that the district court ever made any inquiry as to the permissibly prospective at all in In re Young. All the district court focused on was back payments. In fact, I looked all the way through that district court decision to suggest what it would mean in the future and couldn't find anything. Do I need to remand to the district court to give a chance to look at In re Young or X, pardon me, X Party Young and prospective relief so that they can at least look at that kind of stuff? Your Honor, remand would not be appropriate here, and this is why La Clinica did not request leave to amend below. It did not argue in this court that it should have been granted leave to amend its claim. This complaint does not clearly allege a prospective claim. It's entirely backwards looking at the previous years of its accounting. And under this Court's decision in a number of cases, including most recently Raines-Pastabella v. Visa USA, that's at 442 F-3741, the Court has stated that it would be improper to remand with instructions to allow leave to amend when a party has failed to raise those objections. What about when I read the complaint, it seems to me the plaintiffs argue that the FQHC status of pharmacy services is something that is taken from them and the rights they're under. That was never adjudicated and might have some prospective permissible thought. Well, I believe, Your Honor, as to La Clinica, two things. La Clinica has not argued that issue. It's waived any claim. NEMS argued it in their complaint. Correct. But again, they have not – NEMS does not rely on that provision in its case to argue that the district court's dismissal was incorrect and has waived any claim as to that provision. It would help me if you would tell us what you think our last paragraph should be if we reach the result you ask us to reach. What would we say? Well, I – Your Honor, I think with respect to NEMS, the district court's decision can – can be affirmed because NEMS states purely a pure – a retrospective claim for money that must be paid from the State treasury and is clearly barred by principles of sovereign immunity embodied in the Eleventh Amendment and has not stated any theory sufficient to evade the Eleventh Amendment bar. As to – as to La Clinica, I believe it could read that La Clinica failed to – failed to plead a – a prospective claim for injunctive relief and that regardless its failure to exhaust its available and adequate administrative remedies makes any – supports affirmance of the district court's decision. And those – again, the exhaustion issue was raised below and here, and so the court can – can decide the issue. I'm a little puzzled by your answer on the complaint because the parties clearly ask for a declaratory judgment action. That's prospective. Well, Your Honor, I mean, you'd agree with that. A declaratory judgment action and an injunction would be the classic types of ex parte young prospective relief that would not be subject to the Eleventh Amendment, right? Your Honor, I believe that the – you have to look behind what the declaratory and injunctive relief is that they're seeking. Simply the fact that they've denominated their complaint as one for that type of relief does not – does not answer the Eleventh Amendment question. May I parse your answer? You would agree with me that declaratory relief and injunctive relief are not subject to the Eleventh Amendment because they're prospective relief. True? I would agree if – if the underlying relief was not subject to the Eleventh Amendment. I didn't say underlying. I just said those – those theories are not subject to the Eleventh Amendment. Your Honor, I'm not sure I can agree with you. Raise your question. I think you can say yes. I'm going to let you get your butt in, you know, I mean, but that doesn't apply in this case, but are you – are you seriously contesting that prospective relief is barred by the Eleventh Amendment? Absolutely not, Your Honor. So now why tell me why when they ask for a declaratory judgment action – a declaratory judgment, sorry, and an injunction against the way you're doing it in the future, why that isn't prospective? I mean, I know you're saying they didn't really mean it, but that's what they said. Well, Your Honor, with respect to La Clinica, to the extent that they are – that the complaint may be read to state a claim for prospective relief, I – we rely on the argument that – on the fact that La Clinica failed to exhaust its remedies. So wait a minute. Let me understand your answer. So you are conceding, if I'm – that it's not barred by the Eleventh Amendment, but you think it is barred for a different reason, that theory? Yes. Okay. So tell me, how do you exhaust remedies for a prospective claim? Your Honor, because La Clinica can raise its objections to the department's approach towards offsetting its Medicare Part D revenues within the context of its – of the administrative process. As I mentioned, this is a – the argument is really not about – strictly about the policy. It's about the application of the department's policy as it affects La Clinica. And that – Well, how do you do that when you don't even have the figures out there yet on the prospective claim? How do you have this argument? It seems to me the argument can only be about what's already been done or you don't go to administrative. I think that – that claim can be tested within the context of the – Of the past? Of the claims that it – that it has or may still have once there's a – once there's a final accounting. I gather at the end of the day you don't think they've got a remedy anywhere as I'm listening to you, because you would say that the accounting has been done, they haven't exhausted the remedy, and the time has been passed, at least through 19 – 2007 for such an administrative remedy in the state of California, right? That would be your ultimate position. I mean, how can they administratively challenge the 2007 pre-2008 monies administratively now? They can't, can they? I believe that the time would have expired. Expired, yeah. And that's – they were certainly – I mean, that's – La Clinica had the opportunity to present its claims at that time. So when you were actually earlier talking to me about the availability of state remedies, it was sort of in theory. You don't believe they have any state theories under which they could pursue reimbursement for the pre-2008 money, right? I'm sorry. I want to make sure I understood your question, Your Honor. I don't believe they don't – I believe they no longer have the time would have expired for that claim for that year. There is not yet a right claim to present to the administrative – through the administrative appeals process to leave the final accounting. There's certainly no injury to La Clinica until that's been done. And – Okay. I think you have your hand up. Any further questions? All right.  Thank you, Your Honor. We'll give you five minutes for rebuttal. I'm reading from the last page, page 28 of La Clinica complaint, and it is our prayer for relief, paragraph D, order the State to reimburse plaintiffs the amounts of Medicare Part D income paid to the State from the start of Medicare Part D. That's, you know, the classic retrospective issue. And then the last phrase, and enjoin the State from imposing any burden on La Clinica to remove dual eligible pharmacy payments from La Clinica's per visit rate in excess of amounts equal to pharmacy costs for dual eligibles. So we plead for the – I believe for the appropriate injunctive relief. It's in the complaint. As to ripeness, which counsel mentioned, under 42 U.S.C. 1396B – excuse me, 1396ABB5, the State is supposed to pay, make these FQHC payments no later than every four months. The State has this whole reconciliation process which avoids making the specific payment to which the centers are due and has – takes literally years, as you can see from NIMS 2008 experience, to get around to doing this final reconciliation and eventually making the payment that is due. So I don't know how it can't be right. The State is delaying and delaying. As to Your Honor's question about whether the administrative process works or it doesn't, I mean, we just start with McCulloch v. Maryland and take it on. A State can't adjudicate, can't control, can't regulate Federal funds, divisions of Federal funds, entitlement to Federal funds. It's the province of the Federal courts. It simply is. So the – at best or at worst, the administrative process is an administrative adjunct to a State function and eventually maybe the courts, but the courts would have no authority either. I mean, either the – this is Federal money. Either there's an entitlement here or there or somewhere. But ultimately, in litigation, it's the province of the Federal courts exclusively. Thank you. Thank you, counsel. Thank you. Thank you both for your arguments. It's an interesting case. We'll take it under submission.
judges: Farris, Thomas, Smith